IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| GREGORY A. ANDERS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:17-cv-00058-O-BP |
| § | |
| NANCY A. BERRYHILL, § | |
| Acting Commissioner of the Social § | |
| Security Administration, § | |
| § | |
| Defendant. § | |
| § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES
MAGISTRATE JUDGE AND NOTICE AND ORDER**

Plaintiff Gregory A. Anders ("Anders") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and the administrative record, the undersigned RECOMMENDS that United States District Judge Reed O'Connor AFFIRM the Commissioner's decision.

**FINDINGS AND CONCLUSIONS**

**I.   STATEMENT OF THE CASE**

Anders filed an application for DIB on February 24, 2012, alleging that his disability began on March 5, 2011. (Transcript ("Tr.") 19). The Commissioner denied his claim initially and denied it again on reconsideration. (Tr. 19). After Anders requested a hearing, which was held before Administrative Law Judge ("ALJ") William Helsper, the ALJ issued his decision on October 22, 2013, finding that Anders was not disabled. (Tr. 19). The Appeals Council vacated the ALJ's

decision and remanded for further proceedings, including a new decision, on November 24, 2014. (Tr. 19). The ALJ held a hearing on January 6, 2016 in Fort Worth, Texas, with Anders and his attorney present (Tr. 19). The ALJ then issued his decision on February 3, 2016, finding that Anders was not disabled. (Tr. 16, 20).

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Anders had not engaged in substantial gainful activity since March 5, 2011, the alleged disability onset date. (Tr. 20). At step two, the ALJ determined that Anders had the severe impairments of depression and degenerative disc disease of the lumbar and cervical spine. (Tr. 20). At step three, the ALJ found that Anders' impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Pt. 404(p). (Tr. 23). In particular, the ALJ concluded that Anders retained the residual functional capacity ("RFC") to perform light work, with excepted limitations of no overhead reaching and the need to work with things rather than people. (Tr. 25). At step four, the ALJ determined that Anders was unable to perform any past relevant work. (Tr. 25). And at step five, the ALJ decided that there were a significant number of jobs in the national economy that Anders could perform. (Tr. 25).

The Appeals Council denied review on November 23, 2016. (Tr. 1). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.     FACTUAL BACKGROUND

According to Anders's pleadings, testimony at the administrative hearing, and the administrative record, Anders was 48 years old on the alleged disability onset date, and 52 years old at the time of the administrative hearing. (Tr. 23, 63). He completed a ninth grade education.

(Tr. 23). His past relevant work includes industrial maintenance work. (Tr. 23). Anders asserts that his physical impairments render him disabled under the SSA.

## III. STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197 F.3d 197, 197-98 (5th Cir. 1999); 20 C.F.R. § 404.1520(f). "The claimant

bears the burden of showing that [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC—"the most [a claimant] can still do despite [his] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "It is more than a mere scintilla and less than a preponderance." *Id.* "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## IV.   ANALYSIS

Anders raises five issues on appeal. He claims that the ALJ failed to (1) fully consider all of his vocationally significant impairments in determining his RFC, (2) properly consider all relevant medical evidence of record, (3) properly consider medical opinion evidence, (4) comply with the Appeals Council's order that the ALJ support his RFC assessment with specific references

4

to evidence of record, and (5) include significant functional limitations in the ALJ's hypothetical question to the vocational expert witness ("VE").

### A. Substantial Evidence Supports the ALJ's RFC Determination.

Anders first argues that the ALJ failed to consider all of his vocationally significant impairments. (Plaintiff's Brief ("Pl.'s Br.") at 4). In particular, Anders contends that the ALJ failed to properly consider his carpal tunnel syndrome, decreased extension of the right elbow, personality disorder, and anxiety disorder. (Pl.'s Br. at 4-9).

#### i. Physical Impairments

With respect to his upper extremity limitations, Anders argues that the ALJ "failed to consider [his] complaints and the subjective evidence in support thereof." (Pl.'s Br. at 8). The ALJ observed that Anders underwent left endoscopic carpal tunnel release, after which he reported that he was doing very well. (Tr. 23). Timothy Niacaris, M.D. performed Anders' left endoscopic carpal tunnel release on January 30, 2012. (Tr. 533-34). On February 15, 2012, Dr. Niacaris evaluated Anders following his left endoscopic carpal tunnel release, during which Anders stated that he was "doing very well" and that all of his nighttime symptoms had been resolved following the operation. (Tr. 548). Dr. Niacaris determined that Anders was "doing quite well" and indicated that he would evaluate Anders in another six weeks to ensure that the pain continued to resolve. (Tr. 548). Dr. Niacaris also expressed that he would evaluate Anders for right carpal tunnel syndrome symptoms in six weeks, although Anders was currently asymptomatic and no further treatment was recommended at the time. (Tr. 549).

On May 5, 2012, Mahmood Panjwani, M.D., examined Anders for his reported difficulty with repetitively performing gross hand activities and numbness and tingling in his fingers and hands. (Tr. 23, 612). After examination, Dr. Panjwani concluded that Anders' hand grip was 5/5,

normal, and symmetric; his fine finger movements were normal and he retained normal ability to handle small objects and button buttons on clothing; and his Tinel's and Phalen's sign were negative. (Tr. 614). Dr. Panjwani noted that although Anders claimed to have difficulty performing gross hand activities, particularly in a repetitive fashion, he did not appear to have any problem with fine finger activities. (Tr. 615). Thereafter, on September 9, 2013, Michael Wimmer, M.D. conducted an electrodiagnosis of Anders' bilateral upper extremities and found that Anders had mild right median neuropathy at the wrist, as seen in right carpal tunnel syndrome, but no conclusive evidence of co-existing left carpal tunnel syndrome. (Tr. 1007-08). On physical examination, Dr. Wimmer found that a Tinel's tap was positive on the right and equivocal on the left wrist, and negative on bilateral medial elbows. (Tr. 1010). Dr. Wimmer reported that manual muscle testing resulted in the following assessment: 4+/5 right thumb abduction, 5/5 left thumb abduction, 5/5 bilateral finger abduction, and 5/5 bilateral wrist flexion and extension, elbow flexion extension, forearm pronation supination, and shoulder external rotation. (Tr. 1010-11). Other than Anders' subjective complaints, no objective medical evidence in the record exists supporting any functional limitations that the ALJ failed to consider. Anders also argues that he submitted to surgical release for carpal tunnel syndrome affecting his right hand, and that the ALJ again failed to consider or evaluate any resulting functional limitations. (Pl.'s Br. at 6). But Anders does not argue that any functional limitations actually resulted or that the ALJ failed to consider objective medical evidence in the record establishing that Anders suffered functional limitations as a result of bilateral carpal tunnel syndrome.

  The ALJ specifically referenced the June 11, 2012 opinion of Kelvin Samaratunga, M.D., who opined that Anders retained the residual functional capacity for light work activity. (Tr. 25, 642-49). In his physical RFC assessment, Dr. Samaratunga found that no manipulative limitations

were established by evidence in the record and noted that Anders' finger dexterity was normal, based on Anders' May 5, 2012 examination following his left carpal tunnel surgery. (Tr. 643, 645). Dr. Samaratunga noted Anders' history of bilateral carpal tunnel syndrome, with surgery on the left hand, and referenced the results of Anders' evaluation demonstrating 5/5 grip strength with normal fine finger movements and negative Phalen's and Tinel's signs. (Tr. 643).

To the extent that Anders argues that the ALJ failed to evaluate functional limitations resulting from his carpal tunnel syndrome, because Anders "does not identify any additional work-related limitations resulting from [his carpal tunnel syndrome] that the ALJ should have considered[,] . . . any failure by the ALJ to specifically consider [Anders' carpal tunnel syndrome] as [ ] additional impairment[s] could not have prejudiced [him]." *Heck v. Colvin*, No. 16-30871, 2017 WL 83387, at *2 (5th Cir. Jan. 9, 2017). Thus, "this alleged omission by the ALJ, even if found to be in error, 'is irrelevant to the disposition of [Anders'] case' and thus cannot provide a basis for reversal." *Id.* (citing *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) (quoting *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 2016))).

Anders also argues that with respect to his right elbow, the ALJ "failed to consider limitations resulting from forward extension of the right elbow[,] has not considered [Anders'] right elbow osteoarthritis in determining residual functional capacity[,] and failed to consider [Anders'] complaints and the objective evidence in support thereof." (Pl.'s Br. at 6). Anders argues that although the ALJ found that Anders could not perform overhead reaching, and incorporated that limitation in his RFC, the ALJ failed to consider limitations resulting from forward extension of the right elbow. (Pl.'s Br. at 6). As with his carpal tunnel syndrome symptoms discussed above, Anders does not argue that any physician, treating or otherwise, identified any work-related limitations stemming from his right elbow or upper extremities. He similarly does not offer any

7

identified limitations that the ALJ should have, but failed to, consider in his RFC determination with respect to his right elbow or upper extremities. (*See* Pl.'s Br. at 6-7). To the extent that Anders argues that the ALJ failed to consider his complaints, the ALJ explicitly found that Anders' "testimony concerning his functional limitations and the severity of his pain was not reasonably supported by the objective medical evidence." (Tr. 26). Although Anders argues that the ALJ erred by not incorporating Anders' complained-of limitations in his RFC, "[t]he ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record." *Ewing v. Colvin*, No. 4:13-CV-085-A, 2014 WL 2464765, at *4 (N.D. Tex. June 2, 2014) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)).

*ii. Mental Impairments*

Anders' argument as to the ALJ's failure to appropriately consider his mental impairments is premised on his assertion that the ALJ failed to consider (1) all of his vocationally significant impairments, (2) all relevant medical evidence, and (3) medical opinion evidence. (Pl.'s Br. at 7-13). Anders argues that the evidence in the record "clearly establishes that [Anders] has a personality disorder and an anxiety disorder[, y]et the ALJ failed to consider these impairments." (Pl.'s Br. at 9). Anders submits that the evidence "is more consistent with the evaluation of Dr. [Scott] Hilborn[, a consultative psychological examiner,] than the assessment of the ALJ." (Pl.'s Br. at 9). Anders submits that the ALJ should have included Dr. Hilborn's opined limitations—that Anders would have difficulty interacting appropriately with the public, supervisors, and coworkers, in addition to difficulty responding appropriately to usual work situations and to changes in routine work setting. (Pl.'s Br. at 10). Pertinently, the ALJ limited his RFC determination to "the need to work with things rather than people." (Tr. 23, 25).

8

The ALJ considered the objective medical evidence in the record in concluding that Anders' RFC was limited by his mental impairments. On May 7, 2012, Anders underwent a consultative psychological examination with James Jensen, Psy.D., who observed that Anders had a history of alcohol abuse with continual occasional usage, and diagnosed him with "alcohol dependence, physiological dependence" and "major depression, single episode chronic, severe without psychotic features," with a current/past Global Assessment of Functioning (GAF) score of 40. (Tr. 24, 619-23). Dr. Jensen's mental status examination of Anders revealed no behavioral oddities, linear and logical thought processes, no delusional or obsessional thought content, no suicidal or homicidal ideation, no perceptual abnormalities, and an irritable affect. (Tr. 621). On June 8, 2012, Veena Ghai, M.D. opined that Anders suffered from an affective disorder and a substance addiction disorder. (Tr. 624). Dr. Ghai noted a diagnosis of "[major depressive disorder (MDD)], single episode, chronic, severe without psychotic features" and concluded that Anders "can understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in routine work settings." (Tr. 627, 640).

Although Anders argues that Dr. Hilborn opined that he would have difficulty responding appropriately to usual work situations and to changes in a routine work setting, the ALJ was not required to adopt Dr. Hilborn's limitation and did not err in declining to do so. To the extent that Anders argues that the ALJ should have adopted the limitations expressed in Dr. Hilborn's report, which the ALJ ordered, the ALJ expressly stated that he would not consider such evidence because it "is only relevant if it is found that the claimant was disabled as of or prior to December 31, 2014, for the purpose of determining if the claimant's disability continues." (Tr. 20). The ALJ did not

9

find that Anders was disabled as of or prior to that date, and thus did not consider Dr. Hilborn's report as relevant.

Anders also contends that the ALJ failed to consider medical opinion evidence and determine what weight, if any, to assign to such opinions. (Pl.'s Br. at 13). "[A]lthough there is no statutorily or judicially imposed obligation for the ALJ to list explicitly all the evidence he takes into account in making his findings, [20 C.F.R.] § 404.1527(f)(2) does require that the ALJ articulate the weight given to [the opinions of State agency consultants]." *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005). Therefore, the ALJ erred in failing to provide an explanation, thus subjecting the ALJ's finding to harmless error analysis. *Id.* As discussed above, the opinions of Dr. Ghai and Dr. Samaratunga support and confirm the ALJ's RFC finding, rendering the failure to explicitly accord weight harmless error. *Id.* Moreover, to the extent that Anders argues that the ALJ failed to consider medical opinion evidence by declining to explicitly list each piece of evidence considered, "[t]he ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it[.]" *Id.* The same is true with respect to Anders' argument that the ALJ "failed to consider" his GAF scores. (Pl.'s Br. at 12). In fact, the ALJ expressly cited to Anders' lowest identified GAF score in his decision. (Tr. 24); (Pl.'s Br. at 12). For the reasons stated above, substantial evidence in the record supports the ALJ's consideration of Anders' physical and mental impairments and precludes the existence of reversible error on this issue. *See id.* at 853.

### B.     The ALJ Did Not Err in Not Expressing a Reason for Changing his RFC Assessment After the Appeals Council's Remand.

Anders argues that "[t]he ALJ never explained why he changed the residual functional capacity assessment from sedentary exertion to light exertion." (Pl.'s Br. at 14). Anders submits that as a result, the ALJ's RFC determination is "arbitrary and is not grounded upon the medical

evidence of record." (Pl.'s Br. at 14). Anders does not argue that the ALJ applied an inappropriate legal standard, demonstrate that the ALJ's determination is unsupported by substantial evidence, or offer any legal authority supporting his argument that an ALJ is required to explain a change in his determination after the Appeals Council's vacated the ALJ's previous determination. Accordingly, Anders has not established error here.

### C.     The ALJ's Hypothetical Question to the VE was Not Defective.

Finally, Anders argues that the ALJ erred by finding that he has moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, or pace, but failing to incorporate a limitation related to Anders' limitations with regard to concentration, persistence, or pace. (Pl.'s Br. at 14-15).

> When an ALJ bases a determination of non-disability on the testimony of a vocational expert in response to a hypothetical question, the hypothetical question is defective and constitutes reversible error if either of the following is true:
> 1. The hypothetical question did not incorporate reasonably all disabilities of the claimant recognized by the ALJ, or
> 2. The claimant or his representative was not afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical question (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question).

*Detwiler v. Astrue*, No. 5:10-CV-00194-BG, 2012 WL 569188, at *4-5 (N.D. Tex. Jan. 19, 2012), *report and recommendation adopted,* No. 5:10-CV-00194-BG, 2012 WL 589577 (N.D. Tex. Feb. 22, 2012) (citing *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)).

However, "[t]he hypothetical question that an ALJ poses to a VE need only incorporate the disabilities that the ALJ recognizes." *Gardner v. Massanari*, 264 F.3d 1140, 2001 WL 822457, *2 (5th Cir. 2001) (citing *Bowling*, 36 F.3d at 435).

> If the ALJ's hypothetical example omits a recognized limitation but "the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)," there is no reversible error.

*Id.* (quoting *Bowling*, 36 F.3d at 436); *see also Monroe v. Shalala*, 55 F.3d 633, 1995 WL 313965, *7 (5th Cir. 1995) ("If the claimant is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions, there is no reversible error."); *but see Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001) (holding that an incomplete hypothetical is not automatically saved solely because a claimant fails to point out its deficiencies at the hearing). Anders does not argue that he was not afforded the opportunity to correct any alleged deficiencies in the hypothetical question to the VE. Moreover, "the limitations identified in the 'paragraph B' [ ] criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4. Thus, the ALJ did not err in his hypothetical question to the VE. *See Martinez v. Chater*, 70 F.3d 1269, 1995 WL 696853, *4 (5th Cir. 1995) (citation omitted) (although certain limitations, like those regarding concentration, persistence, or pace, may be caused by a claimant's disabilities, they are not in themselves separate disabilities required to be included in an ALJ's hypothetical question to the VE).

## V.  CONCLUSION

The ALJ followed the correct legal standards in reaching his conclusion, and substantial evidence in the record supports the ALJ's determination that Anders was not disabled.

## **RECOMMENDATION**

For the foregoing reasons, the undersigned RECOMMENDS that Judge O'Connor AFFIRM the Commissioner's decision.

### **NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## **ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party shall have until **July 13, 2017** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

Signed June 29, 2017.

                                                         Hal R. Ray, Jr.
                                                         UNITED STATES MAGISTRATE JUDGE